# EXHIBIT 1

## DECLARATION OF ANNALINDA MARTINEZ

I, Annalinda Martinez, state and declare as follows:

1.    My name is Annalinda Martinez (formerly, Seangar), and I am a 41-year-old resident of Kennesaw, Cobb County, Georgia.

2.    I am the mother of eight children, ages 21, 19, 18, 16, 15, 10, 5, and 2.   My oldest seven children are all girls, and the youngest is a boy.   I have custody of my two youngest children; I do not have custody of my six eldest daughters.

3.    In January 2018, I reached out to the Division of Family and Children Services (DFCS) for help following a domestic violence situation.   At the time, my six daughters and I had recently been evicted from our home, after having lived with my ex-boyfriend, who is the father of one of my daughters.

4.    I needed help after I witnessed my then-boyfriend molesting my oldest daughter.   I contacted emergency services to report him and create a home that was safe for me and my daughters and away from any further abuse.

5.    When the police arrived, they immediately arrested my ex-boyfriend.  My daughters and I were taken to the station for interviews.   The process was very traumatizing and had a significant negative impact on my mental health.  I testified against him in court because I wanted to protect my daughters.  He was convicted of child molestation and cruelty to children in the first degree and sentenced to 60 years in prison.

6.    Without my ex-boyfriend's income, I struggled financially.   He had been the primary source of income for our family.  I had no other family or friends to lean on for support. Without him, I tried to make ends meet for me and my daughters by working three jobs: driving for Uber, delivering food, and shipping fulfillment at a local factory warehouse.

7.    Despite working three jobs, I could not make enough money to pay rent. In January 2018, we were evicted from our apartment.

8.    The first night after we were evicted, my daughters and I all slept in my van. I was afraid to let them stay with anyone besides me because I felt like I could no longer trust others with their safety after witnessing my ex-boyfriend molest my daughter.

9.    The next day, I went to DFCS and asked for help finding shelter. I told them that we had spent the night in the van and informed them of the situation with my ex-partner and my desire to protect my daughters. The DFCS representative told me they would be able to help me and that they would spend the day making calls to find us shelter. They informed me that I should I should stay in the waiting room at the DFCS office with my daughters.

10.    That evening, it became apparent that DFCS had not been making calls to find my family somewhere for us to be safe together. Instead, they were calling foster homes to find placements for my six daughters and ultimately remove them from my custody. They informed me that they found placements for my daughters and that I needed to find my own place to live.

11.    The next day, I tried to figure out how to get my daughters back and look for safe shelter. DFCS told me that there was no room for negotiation, but each case worker I spoke to told me something different. One case worker said that I could only get my daughters back if I found a house big enough for all six to have their own room, separate from mine, meaning a seven-bedroom home. Another case worker said the children could sleep two to a room. I could not afford a home or apartment that large. Not a single DFCS case worker provided any assistance in helping me find suitable housing or more gainful employment.

12.    I did not receive clarity on the housing requirements to get my daughters back until several

years later, when a court-appointed special advocate ("CASA") who was working with my

daughters informed me that I only needed to have a separate bed for each of my children.

13. My daughters were placed in horrific environments in the DFCS foster care system. They

were physically and sexually abused and neglected. In one home, there was so much

physical abuse that the foster parents forced the children to fight each other. My daughters

were miserable and bounced between homes.

14. DFCS limited my communication with my children and their communication with me.

They informed my daughters that their placements would be negatively impacted if they

contacted me.

15. I did not learn the extent of the abuse until my older daughters aged out of foster care. The

situation in their placements was so bad that my three oldest daughters fled their homes as

soon as they turned 18.

16. When my daughters first entered DFCS custody, I was ordered to pay $100 per month in

child support. I was never given written notice of this child support obligation. DFCS said

they sent notice to an address they had for me, but I was homeless at the time. A few

months later, my support payment was changed to $472. My circumstances had not

changed at the time and I was still homeless. The order changing my payment to $472

stated that I was already $500 in debt. Since that time, my payment has not changed.

17. I do not recall whether I was represented by an attorney at the hearing where the $472

payment order was entered. I was usually represented by different people based on

whoever was working at the courthouse that day.

18. At the hearings, the judge told the attorneys that I was not allowed to speak and that if I

did, the judge would put me in jail.

19. I have never been asked by a judge, attorney, or representative of DFCS whether I can afford to pay $472 per month in child support. I told them that I was unemployed, and they responded by telling me that was my problem and that I would go to jail if I didn't pay. I do not recall being made aware of any right to appeal the order.

20. I have received letters from DCSS informing me that I will go to jail if I do not pay the child support that I owe.

21. The entire process has been very confusing and inconsistent. I have been required to go to different offices in different counties to pay with a money order, and when I tried to send the money order in the mail, I was told it had been lost.

22. In May 2023, I surrendered my parental rights because I was told by DFCS that my children would all be adopted by the same foster mom, but only if I surrendered my rights. I wanted to keep them together and give them some sense of stability.

23. I signed to documents to surrender my rights at the DFCS office building, not in a court. I had no attorney representation and there was no judge. It was only me, a notary, and the DFCS workers.

24. Even after I surrendered my rights, I was still required to pay $472 per month.

25. Soon after I surrendered my rights, the foster mom DFCS had given my daughters to tested positive for methamphetamines, cocaine, marijuana, and other substances. My daughters were removed from her custody and separated from one another.

26. After being separated, my daughters were never offered visitation with each other again.

27. I tried to get my daughters back. I had surrendered based on the fact that they would be adopted together by the foster parent they were living with. I was told that my surrender could not be taken back. According to DFCS, individual surrender forms for each child

were completed and notarized. However, when a judge requested these notarized documents, DFCS could not find them. I do not have any official copies of these documents.

28.    Despite my daughters aging out, being adopted, and having my parental rights surrendered, I was still required to pay $472 per month in child support.

29.    During this time, I gave birth to my two youngest children.

30.    In October 2024 I received letters saying that I owed $13,157 in arrears. The letters threatened me with jail time if I did not pay. Again, I was never asked whether I could afford any amount of child support, let alone whether I could pay $472 per month or $13,157 in arrears.

31.    I was afraid that DFCS would remove my two youngest children from my custody because of this debt, or that they would be placed in foster care if I was sent to jail.

32.    I was able to pay off the $13,157, thanks to the help of an organization called Together with Families. However, I worry about the future because I know that I do not have the ability to afford the payments and care for my current children myself. I worry that these payments will impact my ability to care for my two custodial children, including one who is not yet old enough for preschool. I am currently not working because I cannot afford the cost of daycare, which would be approximately $1,800 per month. My current partner pays our entire rent because I cannot work.

33.    As of today, three of my daughters (21, 19, and 18) have aged out of and left the foster care system. Two of my daughters (15 and 10) have been adopted. The final of my non-custodial daughters (16) has a pending adoption that I believe will be finalized this summer.

34.    My child support amount ($472 per month) has never been adjusted, despite the fact that

five of my six non-custodial daughters are no longer in DFCS custody. The paperwork does not break down the $472 total, whether by child or otherwise.

35.    I was made aware of my ability to file for review of my child support order and request a modification. I did so in October 2024. The person at the DCSS office told me they would have a response for me by early April 2025. At the time of signing this declaration I have had no determination from DCSS on this application.

36.    In April 2025, I went to the DCSS office to inquire about this request for modification. I was told that DCSS could not make a determination until I produced adoption certificates for my daughters.

37.    An employee at DCSS informed me that they had placed a request with DFCS for my daughters' adoption documents. DCSS never got a reply from DFCS

38.    I attempted to get my daughters' adoption certificates form the court. The clerk told me I did not have access to these because I surrendered my parental rights. I do not have any other way to access these documents.

39.    As of this date, I am still required to pay $472 ever month for child support. This puts a strain on my family and makes me fearful for the continued custody of my two children who live with me.

Signed on this _7/9_ day of June, 2025.

Annalinda Martinez