# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

_____

)
ANNALINDA MARTINEZ, individually   )
and on behalf of all others similarly situated, )
)
    Plaintiffs,   )    CASE No. 1:25-cv-04686-TRJ
)
    v.   )
)
GEORGIA DIVISION OF FAMILY AND   )    **PLAINTIFFS'**
CHILDREN SERVICES; GEORGIA   )    **MEMORANDUM IN**
DIVISION OF CHILD SUPPORT   )    **SUPPORT OF**
SERVICES; GEORGIA DEPARTMENT   )    **PLAINTIFFS' MOTION**
OF HUMAN SERVICES; CANDICE L.   )    **FOR PRELIMINARY**
BROCE, in her official capacity as   )    **INJUNCTION**
DIRECTOR OF THE DIVISION OF   )
FAMILY AND CHILDREN SERVICES;   )
CANDICE L. BROCE, in her official   )
capacity as COMMISSIONER OF THE   )
DEPARTMENT OF HUMAN SERVICES;   )
MELODY DeBUSSY, in her official   )
capacity as CHIEF POLICY OFFICER FOR)
THE DEPARTMENT OF HUMAN   )
SERVICES; SARAH HURST, in her   )
official capacity as ASSISTANT DEPUTY   )
COMMISSIONER OF THE DIVISION   )
OF CHILD SUPPORT SERVICES,   )
)
    Defendants.   )
_____)

## Table of Contents

I.    Introduction........................................................................................1

II.   Background .......................................................................................1

III.  Argument..........................................................................................4

      A.    Plaintiffs Meet All Elements Required for This Court to Grant
            a Preliminary Injunction Enjoining Defendants from Enforcing
            Erroneous Child Support Amounts................................................4

            i.    There Is a Substantial Likelihood that Plaintiff Will
                  Succeed on the Merits of Counts Five and Six ......................5

                  a.    Plaintiff Is Highly Likely to Succeed on the Merits
                        of Count Five Because the *Mathews v. Eldridge*
                        Factors Reveal a Federal Due Process Violation.........6

                        1.    Plaintiff's Interest in Her Money is
                              Significant....................................................6

                        2.    The Risk of Erroneous Deprivation is
                              Unacceptably High, and the Procedural
                              Safeguards in Place Are Inadequate and
                              Unavailable...................................................7

                        3.    The Government Has No Interest in
                              Collecting Erroneous Foster Care Fees............12

                  b.    Plaintiff Is Highly Likely to Succeed on the Merits
                        of Count Six Because Georgia Law Specifically
                        Prohibits Foster Care Fees for Children Who Are
                        No Longer in Foster Care .............................................13

            ii.   Absent Preliminary Injunctive Relief, Plaintiff Will Suffer
                  Irreparable Injury ................................................................17

            iii.  The Threatened Injury to Plaintiff Absent Preliminary
                  Injunctive Relief Outweighs the Minimal Damage Relief
                  May Cause Defendants ..........................................................19

      iv.     The Requested Preliminary Injunctive Relief Is in the Public Interest Because It Protects Plaintiff's Constitutional Rights and Prevents Unlawful, Erroneous Deprivations.................................................................20

    B.     This Court Can Grant Relief on Behalf of the Putative Class......21

IV.    Conclusion .....................................................................24

# Table of Authorities

## Cases

*A.A.R.P. v. Trump*, 145 S. Ct. 1364 (2025)..............................................................22

*Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848 (S.D. Cal. 2019)..............23

*Benjamin v. Oliver*, 2025 WL 2542072 (N.D. Ga. Sept. 4, 2025) ..........................22

*Buxton v. Plant City*, 871 F.2d 1037 (11th Cir. 1989)..............................................6

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ...........................................................23

*Cotton v. Jackson*, 216 F.3d 1328 (11th Cir. 2000).................................................11

*Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312 (11th Cir. 2019).............20

*Dickman v. C.I.R.*, 465 U.S. 330 (1984) .....................................................................6

*Ellison v. Thompson*, 240 Ga. 594 (Ga. 1978).........................................................15

*Elrod v. Burns*, 427 U.S. 347 (1976) .......................................................................19

*Exxon Mobil Corp. v. Allapattah*, 545 U.S. 546 (2005) ..........................................17

*Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200 (N.D. Ga. 1995)....................21

*G.W. Henssler & Assoc., Ltd. v. Marietta Wealth Mgmt., LLC*, 2017 WL 6996372
    (N.D. Ga. Oct. 23, 2017) .....................................................................................21

*Georgia v. President of the United States*, 46 F.4th 1283 (11th Cir. 2022)............18

*Gonzalez v. Governor of Ga.*, 978 F.3d 1266 (11th Cir. 2020)..................................5

*Hamlyn v. Rock Island Cnty. Metro. Mass Transit Dist.*, 960 F. Supp. 160 (N.D. Ill.
    1997) ................................................................................................................7, 18

*Harris v. Graddick*, 593 F. Supp. 128 (M.D. Ala. 1984) ........................................22

*Kaiser v. County of Sacramento*, 780 F. Supp. 1309 (E.D. Cal. 1991)...................22

*KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261 (11th Cir. 2006) .................4

*Lee v. Christian Coal. of Am. Inc.*, 160 F. Supp. 2d 14 (D.D.C. 2001)..............7, 18

*Lemon v. Kurtzman*, 411 U.S. 192 (1973) ...............................................................23

*Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171 (11th
    Cir. 1993).................................................................................................................6

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ...............................................................6

*Memphis Light, Gas, and Water Division v. Craft*, 436 U.S. 1 (1978) ............ 11, 12

*Mitchell v. Erdmier*, 253 Ga. 335 (Ga. 1984).........................................................15

*Odebrecht Constr., Inc. v. Sec'y, Florida Dept. of Transp.*, 715 F.3d 1268 (11th
    Cir. 2013)...............................................................................................................18

*Planned Parenthood of Southwest and Central Florida v. Philip*, 194 F. Supp. 3d
    1213 (N.D. Fla. 2016)............................................................................................21

*Resnick v. KrunchCash, LLC.*, 34 F.4th 1028 (11th Cir. 2022) ................................6

*Rubin v. Young*, 373 F. Supp. 3d 1347 (N.D. Ga. 2019) ...........................................5

*Sample v. Poteralski*, 169 Ga. App. 448 (Ga. Ct. App. 1984)..................................16

*SisterSong Women of Color Reproductive Justice Collective v. Kemp*, 410 F. Supp. 3d 1327 (N.D. Ga. 2019) ................................................................20

*Storer Communications, Inc. v. Mogel*, 625 F. Supp. 1194 (S.D. Fla. 1985)..........20

*Strawser v. Strange*, 105 F. Supp. 3d 1323 (S.D. Ala. 2015)....................................22

*Thomas v. Johnston*, 557 F. Supp. 879 (W.D. Tex. 1983) ......................................22

*Trump v. Int'l Refugee Assist. Project*, 137 S. Ct. 2080 (2017) ..............................23

*United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966)............................17

*United States v. Atlanta Internal Medicine Group*, 2017 WL 1043028 (N.D.G.A. Oct. 10, 2017) ...........................................................................................20

*Valentine v. Collier*, 141 S.Ct. 57 (2020) ................................................................10

*Vital Pharmaceuticals, Inc. v. Monster Energy Co.*, 2020 WL 3312724 (S.D. Fla. Jan. 24, 2020)..........................................................................................20

*Willingham v. City of Valparaiso*, 638 Fed. Appx. 903 (11th Cir. 2016) ..............10

*Winkle Pontiac Motorsports, Inc. v. Shepherd*, 699 F. Supp. 1572 (N.D. Ga. 1988) .............................................................................................................21

*Zinermon v. Burch*, 494 U.S. 113 (1990)................................................................10

## Statutes

28 U.S.C. § 1331 .......................................................................................................19

28 U.S.C. § 1343 .......................................................................................................19

28 U.S.C. § 1367 .......................................................................................................19

42 U.S.C. § 1983 .......................................................................................................19

42 U.S.C. § 654(4)(A) ..........................................................................................2, 10

42 U.S.C. § 654(6)(A) .................................................................................................3

42 U.S.C. § 671(a)(17) ...................................................................................... passim

42. U.S.C. §§ 651 ........................................................................................................2

O.C.G.A. § 15-11-261(a) ..........................................................................................17

O.C.G.A. § 19-6-15(e) ..............................................................................................16

iv

## Exhibit List

Exhibit 1.............................................................Declaration of Annalinda Martinez

Exhibit 2.....................................................................October 2, 2025 DCSS Letter

Exhibit 3...................................................................October 30, 2025 DCSS Letter

Exhibit 4....................................................................Plasma Center Receipt

## I.    Introduction

Defendants are currently collecting foster cares fees that they know are erroneous.  Pursuant to Fed. R. Civ. P. 65(a), Plaintiff Annalinda Martinez, on behalf of herself and the putative "adult-and-adopted-children class" (as defined in Plaintiff's Amended Complaint, Doc. 20 at ¶233) hereby moves for a preliminary injunction enjoining Defendants from enforcing erroneous foster care fees against Ms. Martinez and members of the putative class whose children have either reached the age of majority or been adopted and thus are no longer in state care.

While Plaintiffs' Amended Complaint defined an additional indigent class (Doc. 20 at ¶232) and alleged six total claims for relief (*id.* at ¶¶272–309), Plaintiffs now move for preliminary injunctive relief for only the adult-and-adopted-children class based on Counts Five (violation of procedural due process for charging erroneous child-support, *id.* at ¶¶298–302) and Six (violation of Georgia Code § 19-6-15(e) and § 15-11-261(a), *id.* at ¶¶303–309).

## II.    Background

From October 2019 until the present, Defendants have enforced a $472 monthly child-support order against Plaintiff Martinez for her six children that were in foster care.  Ex.1, Martinez Decl., at ¶¶2, 28.  Since 2023, five of those six children have left DFCS custody: three have turned 18 and aged out of the system, and two others have been adopted.  *Id.* at ¶33. Despite the ages and adoption status of her

children, Defendants continue to enforce the $472 child support payment against Ms. Martinez. *Id.* at ¶39. The total fees added up to $13,157 by October 2024. Doc. 20-3; Doc. 20-6.

Defendants' policies make clear that "child support funds collected by DCSS are used to pay for the child's care." Georgia Dept. of Human Services, Div. of Family & Children Services, *Child Welfare Policy Manual – Ch. 9 § 9.12 Child Support*, https://pamms.dhs.ga.gov/dfcs/cws/09-12/ (last visited Nov. 19, 2025). Child support payments collected on behalf of children in foster care are used to reimburse Defendants for foster care maintenance payments that Defendants provide to foster families with help from block grants authorized by the Social Security Act. 42 U.S.C. §§ 671–72. Title IV-E of the Social Security Act provides funding to states to support foster care maintenance payments, among other child welfare services; Title IV-D establishes the Child Support Enforcement Program and allows states receiving Title IV-E funds to enforce child support payments that states then assign to themselves as reimbursement for foster care maintenance payments (FCMPs). *See* 42. U.S.C. §§ 651 et seq., 654(4)(A), 654(6)(A), 671(a)(17). It is only when a child is "IV-E reimbursable" that the state is authorized to collect child support on the child's behalf. *See* Georgia Dept. of Human Services, Div. of Family & Children Services, *Child Welfare Policy Manual – Ch. 9 § 9.12 Child Support*, https://pamms.dhs.ga.gov/dfcs/cws/09-12/ (last visited Nov. 19, 2025) ("The

2

Division of Family and Children Services (DFCS) will . . . *[o]nly* refer parents to the Division of Child Support Services (DCSS) for child support under the following circumstances: (a) The child receives title IV-E FCMPs . . .") (emphasis in original). In other words, Defendants are authorized to collect child support amounts from parents whose children are in foster care only to the extent that the state is disbursing foster care maintenance payments on behalf of those children.

Defendants' own policies clearly state that a child is only IV-E reimbursable when the child is under 18 years of age and resides in a IV-reimbursable placement, defined as a licensed or approved foster family home, a licensed or approved relative foster home, or a licensed group home or child care facility. Georgia Dept. of Human Services, Div. of Family & Children Services, *Child Welfare Policy Manual – Ch. 9 § 9.9 IV-E Reimbursability*, https://pamms.dhs.ga.gov/dfcs/cws/09-09/ (last visited Nov. 19, 2025). Neither children in adoptive homes nor children over the age of 18 receive foster care maintenance payments from Defendants. Defendants' policies explicitly state that a child loses IV-E eligibility when the child reaches age 18 and when DFCS custody is terminated. *Id.*

Plaintiff Martinez surrendered parental rights to all six of the children in May 2023, after facing insurmountable child-support debt and being told that a voluntary surrender would ensure that her children stayed together. Ex. 1 at ¶22. Since May 2023, three of the six children have turned 18 and are no longer in state care at all,

two have been adopted and are no longer in state care at all, and one has a pending adoption. *Id.* at ¶33. Despite the fact that only one of the six children is still receiving any foster care maintenance payments, Defendants continue to enforce $472 monthly payments against Ms. Martinez and continue to do so using the threat of incarceration. *Id.* at ¶¶30, 33, 39.

## III. Argument

This Court should grant a preliminary injunction because (A) Plaintiff meets all the legal elements required for a preliminary injunction to issue, and (B) relief on behalf of the putative class is appropriate.

### A. Plaintiffs Meet All Elements Required for This Court to Grant a Preliminary Injunction Enjoining Defendants from Enforcing Erroneous Child Support Amounts

Plaintiff Martinez and members of the proposed adult-and-adopted-children class are entitled to a preliminary injunction enjoining Defendants from enforcing erroneous foster care fees for children no longer in foster care because (i) Plaintiff can demonstrate substantial likelihood of success of the merits of Counts Five and Six; (ii) Plaintiff will continue to suffer irreparable injury from erroneous $472 monthly bills that she cannot afford; (iii) the threatened injury to Plaintiff outweighs any harm that requested relief would inflict on Defendants; and (iv) the requested relief would serve the public interest. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006). The Eleventh Circuit has recognized that a

4

substantial likelihood of success on the merits is "generally the most important" of these factors. *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 n.12 (11th Cir. 2020). At the preliminary injunction stage, courts "may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Rubin v. Young*, 373 F. Supp. 3d 1347, 1351 (N.D. Ga. 2019).

### i.    There Is a Substantial Likelihood that Plaintiff Will Succeed on the Merits of Counts Five and Six

Plaintiff moves for preliminary injunction to enjoin Defendants from enforcing erroneous foster care fees based on Counts Five and Six from the Amended Complaint. Count Five is that Defendants violate federal Due Process by charging erroneous foster care fees with inadequate procedures for correction (Doc. 20 at ¶¶193–209, 298–302). Count Six is that Defendants violate state law by illegally charging child support after children reach the age of majority or are adopted (*Id.* at ¶¶210–230, 303–309). Plaintiff is highly likely to succeed on the merits of both of these claims because (a) under the *Mathews v. Eldridge* balancing test for due process violations, all factors weigh heavily in favor of Plaintiff, and (b) Georgia law specifically prohibits Defendants' current conduct that Plaintiff now seeks to enjoin.

### a.   Plaintiff Is Highly Likely to Succeed on the Merits of Count Five Because the *Mathews v. Eldridge* Factors Reveal a Federal Due Process Violation

Due process requires considering (1) the private interest affected by the government's deprivation, (2) the risk of erroneous deprivation, and (3) the governmental interest at stake. *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976). All three factors demonstrate that Defendants' collection of foster care fees for children no longer in foster care is erroneous.

### 1.   Plaintiff's Interest in Her Money is Significant

The private interest affected by Defendants' erroneous foster care fees is significant because Defendants are attempting to collect hundreds of dollars per month of Plaintiff's money. *See, e.g.*, *Dickman v. C.I.R.*, 465 U.S. 330, 336 (1984) ("We have little difficulty accepting the theory that the use of valuable property — in this case money — is itself a legally protectible property interest."); *Resnick v. KrunchCash, LLC.*, 34 F.4th 1028, 1035 (11th Cir. 2022) ("Plaintiffs have a constitutionally protected property interest in their own funds."); *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1176 (11th Cir. 1993) ("The Plaintiffs clearly have a property interest in the money they own."); *Buxton v. Plant City*, 871 F.2d 1037, 1042 (11th Cir. 1989) ("Property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money."). For Plaintiff Martinez, Defendants continue to demand $472 in

6

monthly foster care fees, leading to $13,157 in total arrears by October 2024.  Doc. 20-3; Doc. 20-6.  The magnitude of the monetary amounts makes Ms. Martinez's private interest substantial.  The private interest is only heightened by the fact that Ms. Martinez is indigent, making her money essential for her survival.  *See, e.g.*, *Lee v. Christian Coal. of Am. Inc.*, 160 F. Supp. 2d 14, 32 (D.D.C. 2001) (finding that financial injury resulting in "[t]he inability to pay utility bills or to feed one's children or the risk of being evicted from one's home, amounts to irreparable injury."); *Hamlyn v. Rock Island Cnty. Metro. Mass Transit Dist.*, 960 F. Supp. 160, 162 (N.D. Ill. 1997) (holding that monetary loss is an irreparable injury when "the plaintiff is so poor that [s]he would be harmed . . . by the loss of" money).  Ms. Martinez's interest is heightened further by the fact that she has two custodial children at home.  Ex. 1 at ¶31.

> **2.    The Risk of Erroneous Deprivation is Unacceptably High, and the Procedural Safeguards in Place Are Inadequate and Unavailable**

The risk of erroneous deprivation is exceedingly high because there is no justification for Defendants to collect foster care fees for children not in foster care, and Defendants provide no meaningful procedure through which Ms. Martinez can correct the erroneous enforcement.  For years after some of Ms. Martinez's children reached the age of majority and others were adopted, Defendants continued to demand the same amount as when she had six children in state care.  Ex. 1 at ¶28.

This enforcement was definitionally erroneous because, under Defendants' own policies, they are only authorized to secure assignments of child support on behalf of children receiving foster care maintenance payments under Title IV-E of the Social Security Act.  Georgia Dept. of Human Services, Div. of Family & Children Services, *Child Welfare Policy Manual – Ch. 9 § 9.12 Child Support*, https://pamms.dhs.ga.gov/dfcs/cws/09-12/ (last visited Nov. 19, 2025) (directing DFCS to refer parents to DCSS for child support *only* when the child is receiving Title IV-E foster care maintenance payments).  Defendants' own policies define a child as IV-E reimbursable when the child is under 18 and when the child resides in a IV-E reimbursable placement, which is only a foster family home, a relative foster home, or a licensed child group home or child care facility.  Georgia Dept. of Human Services, Div. of Family & Children Services, *Child Welfare Policy Manual – Ch. 9 § 9.9 IV-E Reimbursability*, https://pamms.dhs.ga.gov/dfcs/cws/09-09/ (last visited Nov. 19, 2025).  Under federal law, Defendants are authorized to enforce child support obligations for children for whom "benefits or services for foster care maintenance are provided." 42 U.S.C. § 654(4)(A)(i)(II); *see also* 42 U.S.C. § 671(a)(17) (authorizing states to "secure an assignment to the State of any rights to support on behalf of each child receiving foster care maintenance payments").

These legal authorities make clear that the collection and enforcement of child support against Ms. Martinez for her children who are over 18 and/or adopted is

erroneous.  Defendants have already deprived Ms. Martinez of more than $13,000,
Ex. 1 at ¶¶30, 32, at least some of which was erroneous.  Defendants have continued
to enforce $472 in monthly child support against Ms. Martinez, with the most recent
letter demanding payment and threatening federal tax refund interception, debt
reporting, and passport revocation sent on October 30, 2025.  Ex. 2, October 2, 2025
Letter; Ex. 3, October 30, 2025 Letter.

There exist no adequate procedural safeguards to protect against erroneous
deprivation for Ms. Martinez and others who are similarly situated.  While there does
exist a judicial avenue through which parents can request modifications to their child
support amounts, that mechanism has proven entirely inaccessible.  After requesting
a modification in October of 2024 (38 months after her eldest child turned 18, Doc.
20-2 at p. 2, and 22 months after her second eldest child turned 18, *id.*), Ms. Martinez
did not hear anything from Defendants regarding her modification request until she
went directly to DCSS in April of 2025, at which point a third child had turned 18
(*id.*) and two had been adopted (Ex. 1 at ¶33).  It was only at that point that DCSS
informed Ms. Martinez that her request would not be considered until she produced
adoption certificates for the children who had been adopted.  *Id.* at ¶36.  A DCSS
employee informed Ms. Martinez that DFCS had not responded to DCSS's request
for the adoption documents, *id.* at ¶37, so Ms. Martinez took it upon herself to go to

the court to obtain the documents, but was told by the court clerk that she could not access those documents because she had surrendered her parental rights. *Id.* at ¶38.

Defendants have not addressed or explained why it is Ms. Martinez's responsibility to provide documents to which she has no legal access but to which they have ready access, nor have they explained why, even in the absence of adoption documents, the request cannot be processed based on three of Ms. Martinez's children reaching the age of 18 and no longer being in state care or receiving foster care maintenance payments. The result is that Ms. Martinez has no way whatsoever to make use of the modification process, heightening the risk of erroneous deprivation and making Plaintiff highly likely to succeed on the merits of her due process claim. *See, e.g.*, *Zinermon v. Burch*, 494 U.S. 113, 124 (1990) (holding that § 1983 is intended to provide a remedy for civil rights in situations "where the state remedy, though adequate in theory, was not available in practice"); *Valentine v. Collier*, 141 S.Ct. 57, 59 (2020) (Sotomayor, J., dissenting) ("[E]ven if an internal process is officially on the books, it is not available if, as a practical matter, is not capable of use to obtain relief."); *Willingham v. City of Valparaiso*, 638 Fed. Appx. 903, 907 (11th Cir. 2016) ("[F]inding that review procedures are theoretically available on paper does not end the inquiry when [the plaintiff] could not, as a practical matter, take advantage of it."); *Cotton v. Jackson*, 216 F.3d 1328,

10

1331 (11th Cir. 2000) ("[T]he state procedure must be able to correct whatever deficiencies exist.").

The unacceptably high risk of erroneous deprivation can also be illustrated by analogizing the facts in *Memphis Light, Gas, and Water Division v. Craft*, 436 U.S. 1 (1978), where the Supreme Court addressed whether a utilities company had provided due process to customers whose utilities had been shut off for nonpayment of disputed utilities bills. In that case, the petitioners had been erroneously double-billed for utilities over the course of many months, and their utilities were shut off for nonpayment. *Id.* at 4–5. On several occasions, one of the petitioners went in person to the Defendant's offices to resolve the issue, where she "sought in good faith to determine the cause of the double billing, but was unable to obtain a satisfactory explanation or any suggestion for further recourse from MLG&W employees." *Id.* at 5. The Supreme Court held that due process requires "an established procedure for resolution of disputes," *id.* at 12, and that *even if* the petitioner had been apprised of the option to dispute the bill by visiting the defendant company's office or calling them by phone, the petitioner's "repeated . . . good faith efforts" to resolve the issue "ma[de] clear that she was not adequately notified of the procedures asserted to have been available at the time." *Id.* at 14. The Supreme Court further held that "due process requires the provision of an opportunity for the presentation to a designated employee of a customer's complaint that he is being

11

overcharged" and that "[w]hether or not such a procedure may have been available to other[s] . . . it was not made available to [the petitioner]." *Id.* at 16. Most importantly, on the merits of Count Five, Defendants are required to offer "a procedure for protesting a [deprivation] . . . as unjustified." *Id.* at 15.

The facts here are directly comparable because Ms. Martinez has been charged child support in error for children no longer in state care or receiving state funds and has made "repeated . . . good faith efforts" to resolve the issue, only to be met with stonewalling and legally-impossible demands. Here, just as in *Memphis Light*, due process requires an opportunity for Ms. Martinez and similarly situated parents to present complaints that they are essentially being "overcharged" or that a deprivation is "unjustified." *Id.* at 15, 16. And here, just as in *Memphis Light*, such a procedure, whether or not it exists on paper, was not made available to Ms. Martinez, as evidenced by the fact that she is legally and logistically unable to comply with the theoretical procedure.

### 3.     The Government Has No Interest in Collecting Erroneous Foster Care Fees

The government's interest in collecting foster care fees for children no longer in foster care is non-existent. Defendants' own policies state that they are only authorized to collect foster care fees for children receiving Title IV-E foster care maintenance payments, require that Defendants DFCS and Broce periodically assess the appropriateness of child support enforcement, and require Defendants DFCS and

12

Broce to notify Defendants DCSS and Hurst when it is no longer appropriate to continue enforcement of a child support order. Georgia Dept. of Human Services, Div. of Family & Children Services, *Child Welfare Policy Manual – Ch. 9 § 9.12 Child Support*, https://pamms.dhs.ga.gov/dfcs/cws/09-12/ (last visited Nov. 19, 2025). Defendants DFCS and Broce are required by their own policy to document changes to foster care cases that impact child support collection, and in all circumstances, Defendants have discretion whether or not to enforce or continue to enforce child support against parents whose children are in foster care. *Id.* Federal law authorizes Defendants to secure the assignment of support "on behalf of each child receiving foster care maintenance payments." 42 U.S.C. § 671(a)(17). There are no authorities that exist in state law, Defendants' policies, or federal law that authorize Defendants to collect foster care fees for children no longer in foster care and thus no longer receiving foster care maintenance payments or other funds disbursed by Defendants. Defendants are no longer disbursing *any* funds for the care of five of Ms. Martinez's biological children. Thus, any child support they collect for those children is erroneous. Defendants have no interest at all in collecting erroneous foster care fees.

> **b.  Plaintiff Is Highly Likely to Succeed on the Merits of Count Six Because Georgia Law Specifically Prohibits Foster Care Fees for Children Who Are No Longer in Foster Care**

13

Plaintiff is highly likely to succeed on the merits of Count Six because Georgia law clearly and explicitly does not allow collection of foster care fees for children who have reached the age of majority, nor does it allow collection of foster care fees for children who have been adopted.

Beginning first with the part of Count Six dealing with adult children, Georgia law defines the duration of child support responsibility as continuing "until the child reaches the age of majority, dies, marries, or becomes emancipated, whichever first occurs." O.C.G.A. § 19-6-15(e). The only exception to this is a child "who is enrolled in and attending a secondary school, and who has attained the age of majority before completing his or her secondary school education, provided that such financial assistance shall not be required after a child attains 20 years of age." *Id.* Ms. Martinez's three eldest children turned 18 in January 2025, December 2022, and August 2021. Ex. 4, Request for Modification. Her two eldest children are 22 and 21 years old at the time of this writing; the third oldest turned 18 in January 2025 and is no longer enrolled in secondary school. *Id.* The exception does not apply to any of these three children, and it is therefore against state law for *any* child support to be enforced against Ms. Martinez for her three eldest children. Nothing in state law nor in Defendants' stated policies override § 19-6-15(e), and in any event, none of these three children are in state care or in reimbursable placements, so Defendants have no authority to collect foster care fees for these three adult children. In fact,

14

Defendants' own policies concerning child support enforcement state that a child is only IV-E reimbursable when the child is under 18 years of age. Georgia Dept. of Human Services, Div. of Family & Children Services, *Child Welfare Policy Manual – Ch. 9 § 9.12 Child Support*, https://pamms.dhs.ga.gov/dfcs/cws/09-12/ (last visited Nov. 19, 2025). The same policy describes a "fatal flaw with IV-E," defined as when "the child loses IV-E eligibility and reimbursability" upon "[t]he child reach[ing] age 18." *Id.*

Plaintiff is also highly likely to succeed on the merits of Count Six because Defendants are continuing to demand foster care fees for children who have been adopted, also in violation of state law. Georgia law explicitly states that "[a]n order terminating the rights of a parent . . . shall divest the parent and his or her child of all legal rights, powers, privileges, immunities, duties, and obligations with respect to each other except: (1) the right of such child to receive child-support from his or her parent until a final order of adoption is entered." O.C.G.A. § 15-11-261(a).

Final orders of adoption have been entered for at least two of Ms. Martinez's minor children. Ex. 1 at ¶¶22, 33. Thus, state law prohibits the continued collection of foster care fees for those children. Georgia courts have made clear that finalized adoptions relieve biological parents of child support obligations. *See, e.g.*, *Ellison v. Thompson*, 240 Ga. 594, 596 (Ga. 1978) ("When the final adoption shall have been granted, the parents of the child shall be divested of all legal rights or

obligations from them to the child or from the child to them."); *Mitchell v. Erdmier*, 253 Ga. 335, 335 (Ga. 1984) (A decree of adoption "relieves the natural parent(s) of the adopted individual of all parental rights and responsibilities"); *Sample v. Poteralski*, 169 Ga. App. 448, 449 (Ga. Ct. App. 1984) ("We find the [state] statute to be quite clear in relieving from future child support obligations the natural parent whose parental rights have been terminated pursuant to an adoption proceeding.").

Federal law and Defendants' policies also illustrate Plaintiffs' likelihood of success on the merits on Count Six. Title IV-E of the Social Security Act only allows states to collect assigned child support "for each child receiving foster care maintenance payments." 42 U.S.C. § 671(a)(17). Defendants' policies state that a child is only Title IV-E reimbursable when they are residing in a IV-E reimbursable placement, defined only as a foster family home, a relative foster home, or a licensed group home or child care facility. Georgia Dept. of Human Services, Div. of Family & Children Services, *Child Welfare Policy Manual – Ch. 9 § 9.12 Child Support*, https://pamms.dhs.ga.gov/dfcs/cws/09-12/ (last visited Nov. 19, 2025). Adoptive homes are not reimbursable placements, and Defendants' policies make clear that one "fatal flaw with IV-E" occurs when "DFCS custody is terminated." *Id*.

This Court can use its supplemental jurisdiction to grant Plaintiff's requested preliminary injunctive relief under the state law claim independently of the federal claim. This Court has supplemental jurisdiction over Plaintiff's state law claims

pursuant to 28 U.S.C. § 1367, which provides federal courts jurisdiction to hear state-law claims that form part of the same case or controversy as the claims that give rise to original jurisdiction. Because this is a civil rights action arising under 42 U.S.C. § 1983 and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, this Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Doc. 20 at ¶28. And because Plaintiff's state law claims "derive from a common nucleus of operative fact" — Defendants' unlawful deprivations of Plaintiff's monetary property — this Court has supplemental jurisdiction over those claims. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 720 (1966); *see also Exxon Mobil Corp. v. Allapattah*, 545 U.S. 546, 547 (2005) ("Once a court has original jurisdiction over some of the claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."). Thus, even if this Court denies preliminary relief on Plaintiff's federal claim, because there is no doubt as to federal jurisdiction, this Court can grant relief on Plaintiff's state claim.

### ii. Absent Preliminary Injunctive Relief, Plaintiff Will Suffer Irreparable Injury

Ms. Martinez and members of the proposed adult-and-adopted-children class have already faced irreparable injury from Defendants' erroneous deprivation of money, and such harm will only be exacerbated without preliminary injunctive relief. Defendants have already collected more than $13,000 in child support from

17

Ms. Martinez, Doc. 20 at ¶61, at least some of which is erroneous. The Eleventh Circuit has recognized that "monetary loss is an irreparable harm." *Georgia v. President of the United States*, 46 F.4th 1283, 1302 (11th Cir. 2022); *see also Odebrecht Constr., Inc. v. Sec'y, Florida Dept. of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013).

Ms. Martinez's indigence and her custody of her two youngest children only exacerbates the risk of irreparable harm absent injunctive intervention. *See, e.g.*, *Lee v. Christian Coal. of Am. Inc.*, 160 F. Supp. 2d 14, 32 (D.D.C. 2001) (finding that financial injury resulting in "[t]he inability to pay utility bills or to feed one's children or the risk of being evicted from one's home, amounts to irreparable injury."); *Hamlyn v. Rock Island Cnty. Metro. Mass Transit Dist.*, 960 F. Supp. 160, 162 (N.D. Ill. 1997) (holding that monetary loss is an irreparable injury when "the plaintiff is so poor that [s]he would be harmed . . . by the loss of" money). Any funds Ms. Martinez is forced to pay to Defendants are funds she cannot spend to support and care for her two youngest children. Ex. 1 at ¶32. Moreover, Defendants' continued enforcement, accompanied by the threat of incarceration (Doc. 20-5; Doc. 20-6), jeopardizes Ms. Martinez's liberty and the custody of her youngest children. Ex. 1 at ¶31. Ms. Martinez sold plasma three times during the month of September 2025 alone, subjecting herself to physical pain and side effects in order to make ends meet and attempt to comply with Defendants' erroneous demands for child support.

Ex. 4, Plasma Receipts. All of these harms are irreparable, and all will continue without a preliminary injunction enjoining Defendants from continuing to enforce erroneous child support.

It is also well-established that the "deprivation of constitutional rights unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Here, Defendants' erroneous collection of foster care fees for adult and adopted children violates due process because the risk of erroneous deprivation is unacceptably high and there do not exist accessible procedures through which parents can dispute the erroneous enforcement. *See* Doc. 20 at ¶¶193–209, 298–302. The continued violation of parents' due process rights, which will persist absent a preliminary injunction, constitutes irreparable harm.

### iii. The Threatened Injury to Plaintiff Absent Preliminary Injunctive Relief Outweighs the Minimal Damage Relief May Cause Defendants

The irreparable harm to Ms. Martinez and members of the proposed adult-and-adopted-children class significantly outweighs any hypothetical burden that the requested injunction may impose upon Defendants. All that Plaintiff seeks is to stop Defendants from attempting to collect erroneous fees that they have no authority to collect. Compliance with the requested relief would merely require Defendants to do what they are already obligated to do under the Due Process Clause and state law: not collect erroneous foster care fees and provide adequate and accessible

procedures for parents to dispute erroneous bills.  Defendants will not be harmed by a court order necessitating their compliance with existing laws.  *See, e.g.*, *United States v. Atlanta Internal Medicine Group*, 2017 WL 1043028, at *1 (N.D. Ga. Oct. 10, 2017) ("The requested injunction, which simply requires Defendants to obey existing laws, causes them no harm and avoids injuries . . . to the [plaintiff]."); *Storer Communications, Inc. v. Mogel*, 625 F. Supp. 1194, 1203 (S.D. Fla. 1985) ("Defendants will suffer no harm if an injunction is issued which simply requires them to obey the law."); *Vital Pharmaceuticals, Inc. v. Monster Energy Co.*, 2020 WL 3312724, at *10 (S.D. Fla. Jan. 24, 2020) ("[A] defendant cannot be heard to complain that an injunction would cause it harm by requiring compliance with the law.").

### iv.    The Requested Preliminary Injunctive Relief Is in the Public Interest Because It Protects Plaintiff's Constitutional Rights and Prevents Unlawful, Erroneous Deprivations

The requested preliminary relief will serve the public interest because Defendants' current conduct of erroneous fees violates both state law and the Constitution.  The Eleventh Circuit has held that "the public interest is served when constitutional rights are protected."  *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019); *see also SisterSong Women of Color Reproductive Justice Collective v. Kemp*, 410 F. Supp. 3d 1327, 1348 (N.D. Ga. 2019) ("The public interest is promoted by the robust enforcement of constitutional rights.")

(internal quotations omitted); *Planned Parenthood of Southwest and Central Florida v. Philip*, 194 F. Supp. 3d 1213, 1223 (N.D. Fla. 2016) ("Vindicating constitutional rights is itself a public interest."). Likewise, this Court has held that "[t]he public's interest is served any time the law is upheld and enforced." *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1219 (N.D. Ga. 1995); *see also Winkle Pontiac Motorsports, Inc. v. Shepherd*, 699 F. Supp. 1572, 1576 (N.D. Ga. 1988) ("The public interest in enforcing state . . . laws is strong."); *G.W. Henssler & Assoc., Ltd. v. Marietta Wealth Mgmt., LLC*, 2017 WL 6996372, at *6 (N.D. Ga. Oct. 23, 2017) ("It is both equitable and in the public interest to require Defendants to abide by the law.").

## B.    This Court Can Grant Relief on Behalf of the Putative Class

This Court has equitable authority to grant the requested relief on behalf of Ms. Martinez and the adult-and-adopted-children class she seeks to represent, defined in the Amended Complaint as "[a]ll persons who are or have been charged child-support for children in foster care whose children have reached the age of majority and concluded secondary school or have been adopted, and who were charged child-support after the time at which those children reached the age of majority and concluded secondary school or were adopted." Doc. 20 at ¶233. At this preliminary stage, Plaintiff has adequately demonstrated that the adult-and-adopted-children class meets all required elements of Rule 23 and that certification

is proper. *Id.* at ¶¶238, 241, 243, 245, 246, 250, 253–261, 263–271. The Supreme Court held in its most recent term that "courts may issue temporary relief to a putative class," *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1369 (2025) (citing 2 W. Rubenstein, Newberg & Rubenstein on Class Actions § 4:30 (6th ed. 2022), and as recently as September 2025, this Court interpreted the *A.A.R.P.* holding to mean that "[t]he availability of class-wide injunctive relief to a putative class is no longer in doubt." *Benjamin v. Oliver*, 2025 WL 2542072, at *17 (N.D. Ga. Sept. 4, 2025). Finding that the plaintiffs met all the criteria for Rule 23(b)(2) certification, this Court had no issue granting a class-wide injunction prior to fully granting class certification. *Id.* at *20–21. Even prior to *A.A.R.P.*, district courts within and beyond the Eleventh Circuit have readily issued preliminary injunctive relief "concurrently with certifying a class or even prior to fully certifying a class." *Strawser v. Strange*, 105 F. Supp. 3d 1323, 1330 (S.D. Ala. 2015); *see also Harris v. Graddick*, 593 F. Supp. 128, 137 (M.D. Ala. 1984) (certifying a class concurrently with issuing a preliminary injunction); *Thomas v. Johnston*, 557 F. Supp. 879, 916 n.29 (W.D. Tex. 1983) ("It appears to be settled . . . that a district court may, in its discretion, award appropriate classwide injunctive relief prior to a formal ruling on the class certification issue based upon either a conditional certification of the class or its general equity powers."); *Kaiser v. County of Sacramento*, 780 F. Supp. 1309, 1312 (E.D. Cal. 1991) (granting class-wide injunctive relief even though the court had not

yet fully addressed defendants' class certification arguments); *Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848, 870 (S.D. Cal. 2019) (noting that a district court "may provisionally certify a class for purposes of a preliminary injunction").

Moreover, even without a putative class, this Court has authority under its general equitable powers to grant the requested injunction enjoining Defendants from enforcing illegal child support and requiring Defendants to provide an accessible procedure through which parents can contest erroneous orders, which will inevitably function as class-wide relief. Because Defendants are violating state laws and the Constitution by collecting erroneous child support without any available procedures through which parents can contest the errors, it would not make sense for the relief to require that Defendants follow Georgia law and the Constitution's Due Process Clause *only* with regard to Ms. Martinez. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (holding that one of the key principles of equity jurisprudence is that "the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the class"); *Trump v. Int'l Refugee Assist. Project*, 137 S. Ct. 2080, 2087 (2017) (per curiam) ("Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents."); *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) (plurality opinion) ("[E]quitable

23

remedies are a special blend of what is necessary, what is fair, and what is workable.").

## IV.    Conclusion

For all of the aforementioned reasons, Plaintiff respectfully requests that this Court enjoin Defendants from collecting foster care fees for children who are legally adults, who have been adopted, or who are otherwise no longer in foster care by specifically ordering that Defendants (A) affirmatively modify or end support orders to account for children who have reached the age of majority, been adopted, or are otherwise no longer in foster care, (B) establish a simple and accessible procedure through which parents can notify Defendants of erroneous charges, (C) immediately correct erroneous charges upon notice from affected parents, and (D) cease enforcement mechanisms, including passport- and license-revocation while this litigation is pending.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Phil Telfeyan*
Phil Telfeyan
Caroline McCance
Lily Milwit
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, DC 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org

*/s/ Darice Good*
Darice Good (Bar No. 300535)

</div>

24

Good Legal Firm, LLC
2300 Holcomb Bridge Road, Suite 103
Roswell, Georgia 30076
(404) 234-5475
darice@goodlegalfirm.com
*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have filed the foregoing using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Phil Telfeyan*
Phil Telfeyan

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this Memorandum complies with the page and type limitations encompassed in Local Rules 5.1 and 7.1(D).

*/s/ Phil Telfeyan*
Phil Telfeyan
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, DC 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org