IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ANNALINDA MARTINEZ,<br><br>Plaintiff,<br><br>v.<br><br>GEORGIA DIVISION OF FAMLY AND CHILDREN SERVICES, *et al.*,<br><br>Defendants. | CIVIL ACTION NO.<br>1:25-cv-04686-TRJ |

**ORDER**

On November 6, 2025, Defendants Georgia Division of Family and Children Services ("DFCS"), Georgia Division of Child Support Services ("DCSS"), Georgia Department of Human Services ("DHS"), DFCS Director and DHS Commissioner Candice Broce, DHS Chief Policy Officer Melody DeBussey, and DCSS Assistant Deputy Commissioner Sarah Hurst filed a motion to dismiss Plaintiff Annalinda Martinez's amended class action complaint. (Doc. 24). On November 18, 2025, Martinez filed a motion for a preliminary injunction. (Doc. 26). Upon review and consideration, and with the benefit of oral argument, Defendants' motion to dismiss is **GRANTED IN PART and DENIED IN PART**. Further, Martinez's motion for a preliminary injunction is **GRANTED IN PART and DENIED IN PART**.

BACKGROUND

Defendants are state agencies and officials responsible for the operation of Georgia's child support and child welfare system. (Doc. 20 at ¶¶ 12–27). In Georgia, parents of children in the foster care system are required to pay child support

reimbursement to the state for the costs associated with the care of their children while in state custody. (*Id.* at ¶¶ 1, 3). DFCS makes recommendations to courts regarding the amount of child support that parents should be charged. (*Id.* at ¶¶ 14, 79). These recommendations are considered and ultimately adopted by courts in the form of child support orders. (*Id.*) These child support orders are entered against parents of children in state custody regardless of the parents' ability to pay. (*Id.* at ¶ 3). This system has resulted in separation and financial hardship for hundreds of families across Georgia due to indigent parents' inability to pay their child support debts. (*Id.* at ¶ 1).

In August 2024, DFCS adopted new guidance dictating a more lenient approach in its enforcement of child support orders against parents of children in state custody. (*Id.* at ¶¶ 78, 99). Under the updated policy, DFCS enforces child support orders only against parents in limited circumstances, including if the parents abdicate their parental responsibility, refuse to cooperate with efforts for reunification, or a child support order is already in place when the child enters foster care. (*Id.* at ¶ 79). Under the updated policy, DFCS also periodically assesses whether enforcement of a child support order will delay family reunification and modifies enforcement actions accordingly. (*Id.* at ¶ 80). This updated policy applies only to parents with child support orders entered after the policy change in August 2024 and does not apply to parents with child support orders entered prior to August 2024. (*Id.* at ¶¶ 81, 107).

Martinez is the mother of eight children. (*Id.* at ¶¶ 8, 9). In early 2018, after she and her six children experienced a short period of homelessness, Martinez sought

housing assistance from her local DFCS office. (*Id.* at ¶¶ 34–35). Suspecting Martinez and her children were homeless, DFCS immediately removed Martinez's six children from her care and placed them in state custody. (*Id.* at ¶ 36). Martinez has since mothered, and currently has custody of, two additional minor children. (*Id.* at ¶ 9).

Despite Martinez's indigence, DFCS recommended, and a court ordered, that Martinez reimburse DFCS $100.00 per month for the costs associated with her children's care while in state custody. (*Id.* at ¶¶ 39–41). In October 2019, this amount was modified at a court hearing, and Martinez was ordered to pay $472.00 per month in child support reimbursements. (*Id.* at ¶¶ 41, 44; Doc. 20-1 at ¶¶ 16–17). Martinez was not given written notice of this child support obligation and was not given the opportunity to express her inability to pay at the hearing. (Doc. 20-1 at ¶¶ 16–19).

In May 2023, Martinez surrendered her parental rights to her six children in state custody due to financial stress stemming from Defendants' enforcement of the child support order. (Doc. 20 at ¶ 51). Of those six children, three have since turned 18 years old and have exited the foster care system, and two have been adopted. (*Id.* at ¶ 52). Even though all but one of her children are no longer in the foster care system and she has surrendered her parental rights to them, DFCS continued to enforce the collection of $472.00 per month against Martinez. (*Id.* at ¶¶ 53–54). DFCS notified Martinez of her accumulated debt and threatened to incarcerate her if she fails to pay. (*Id.* at ¶ 56). With the help of donations, Martinez has paid over $13,000.00 to the state but continues to owe additional child support debt. (*Id.* at ¶ 61).

In October 2024, Martinez submitted a request to modify her child support

order to DFCS. (*Id.* at ¶ 62). After she did not receive a response, Martinez visited a DFCS office in April 2025. (*Id.* at ¶ 64). DFCS staff told Martinez that, to modify her child support order, she would need to produce adoption papers for two of her children to prove that they were no longer in state custody. (*Id.* at ¶ 65). While attempting to retrieve these papers from a local court, a clerk told Martinez that she was not entitled to these adoption papers because she had surrendered her parental rights to those children. (*Id.* at ¶ 66). Martinez has exhausted the options for modifying the child support order and enforcement efforts by Defendants. (*Id.* at ¶ 67).

On August 19, 2025, Martinez initiated this lawsuit against Defendants. (Doc. 1). On October 23, 2025, Martinez filed her amended complaint against Defendants, asserting state law claims and federal constitutional claims under 42 U.S.C. § 1983 and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. (*Id.* at ¶¶ 272–309). Specifically, Martinez's amended complaint asserts:

- A substantive due process claim for violation of her fundamental right to parent;
- An equal protection claim for wealth-based discrimination;
- An equal protection claim based on Defendants' unequal treatment of parents not subject to the August 2024 policy change;
- A procedural due process claim for Defendants' failure to assess her ability to pay child support prior to entry of the child support order;
- A procedural due process claim for Defendants' continued enforcement of child support payments against Martinez after her children were no longer in state custody; and
- Claims for violations of Georgia child support laws, specifically O.C.G.A.

§§ 19-6-15(e), 15-11-261(a).[1]

(*Id.*) Martinez seeks a preliminary injunction enjoining Defendants from enforcing erroneous child support orders against her and similarly situated parents. (Doc. 26). Defendants oppose Martinez's request for a preliminary injunction and seek to dismiss Martinez's amended complaint. (Docs. 24, 28).

On May 18, 2026, the Court held oral argument on the motion to dismiss and the motion for a preliminary injunction. (Doc. 39). During oral argument, Defendants asserted for the first time that they modified Martinez's child support order five months prior in December 2025 to account for Martinez's children no longer being in state custody, and that beginning in January 2026, Martinez was required to pay only $201.00 per month. (Doc. 40 at 2; Doc. 44 at 63:20–23). Defendants continue to enforce the child support order against Martinez in the amount of $201.00 per month and continue to collect from Martinez debt that accumulated before the modification took effect. (Doc. 42 at 9). The Court ordered Defendants to supplement the record with evidence of this modification, which Defendants provided on May 19, 2026. (Doc. 40).[2]

## Legal Standard

A complaint should be dismissed where the court lacks subject matter

[1] These state laws define the duration and scope of a parent's child support obligations in Georgia. *See* O.C.G.A. § 19-6-15(e) ("The duty to provide support for a minor child shall continue until the child reaches the age of majority, dies, marries, or becomes emancipated, whichever first occurs."); *see also* O.C.G.A. § 15-11-261 ("An order terminating the parental rights of a parent shall be without limit as to duration and shall divest the parent and his or her child of all legal rights, powers, privileges, immunities, duties, and obligations with respect to each other . . . .").

[2] Though the Court ordered supplementation, Defendants filed their supplement as a motion. (Doc. 40). Accordingly, Defendants' motion to supplement is granted.

jurisdiction over the dispute. FED. R. CIV. P. 12(b)(1). A Rule 12(b)(1) challenge to subject matter jurisdiction comes in two forms: facial or factual. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (citation omitted). A facial attack "challenges whether a plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [her] complaint are taken as true for purposes of the motion." *Id.* (citation modified). In contrast, a factual attack "challenges the existence of subject matter jurisdiction irrespective of the pleadings, and extrinsic evidence may be considered." *Id.*

Further, a complaint should be dismissed where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); FED. R. CIV. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, a claim will survive a motion to dismiss if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, at the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (citation modified). Courts are not required, however, to accept as true legal conclusions "couched" as factual allegations. *Twombly*, 550 U.S. at 555 (citation omitted).

Finally, a party seeking a preliminary injunction must establish: "(1) a

substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011) (quoting *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009)). An injunction "is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001) (per curiam). The decision as to whether a plaintiff has carried this burden "is within the sound discretion of the district court and will not be disturbed absent a clear abuse of discretion." *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002) (citation modified).

## Discussion

### A. Defendants' Motion to Dismiss

Defendants move to dismiss Martinez's amended complaint for lack of subject matter jurisdiction and failure to state a claim. (Doc. 24).

#### 1. Lack of Subject Matter Jurisdiction

Martinez alleges federal and state claims for damages and injunctive relief against both the agency Defendants and the individual Defendants in their official capacities. (Doc. 20). Defendants argue that some of the Defendants are not proper parties, that sovereign immunity bars many of Martinez's claims, and that she lacks

standing. (Doc. 24-1 at 5, 7–13).

First, the Court lacks subject matter jurisdiction over Martinez's claims against the sub-agencies, DFCS and DCSS. In cases where DHS is already a named Defendant, a suit against a DHS subdivision is redundant. *See First Nonprofit Ins. Co. v. Neighbor to Fam., Inc.*, No. 1:14-cv-02285-RWS, 2015 WL 1137725, at *1 (N.D. Ga. Mar. 12, 2015) ("DFCS is thus not a separate legal entity from DHS because it is an instrumentality of DHS."). Accordingly, Martinez's claims against DFCS and DCSS must be dismissed. Further, all of Martinez's claims against DHS are barred by Eleventh Amendment sovereign immunity. (Doc. 24-1 at 8). "The Eleventh Amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity." *Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1502 (11th Cir. 1995) (citation omitted). "Eleventh Amendment immunity extends not only to the state itself, but also to state officers and entities when they act as an arm of the state." *Lightfoot v. Henry Cnty. Sch. Dist.*, 771 F.3d 764, 768 (11th Cir. 2014) (citation modified). "[DHS] is an arm of the State of Georgia and protected by immunity." *Harmon v. Crittenden*, No. 1:17-cv-00229-ELR, 2017 WL 5473749, at *3 (N.D. Ga. Mar. 30, 2017). And, Martinez fails to offer any statutory or regulatory authority for a waiver of Georgia's sovereign immunity in this case. Accordingly, Martinez's claims

against DHS must be dismissed.[3]

The Court also lacks subject matter jurisdiction over Martinez's claims against the individual Defendants arising under state law. Martinez's claims for damages against the individual Defendants in their official capacities are barred by sovereign immunity. *See Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013) ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court . . . This includes damages claims against State officials in their official capacity.") (citation modified). Martinez has not identified any basis for a waiver of sovereign immunity, so her claims for damages against the individual Defendants must be dismissed.

Likewise, Martinez's request for injunctive relief against the individual Defendants arising out of state law are also barred.[4] "A federal court cannot enjoin a state official to perform his or her duty under state law." *Cambridge Univ. Press v. Becker*, No. 1:08-cv-01425-ODE, 2011 WL 13176112, at *5 (N.D. Ga. Mar. 17, 2011) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.")). Martinez

---

[3] Defendants make additional arguments that DHS is not a "person" subject to suit under § 1983, Martinez cannot bring state tort law claims against DHS in federal court, and claims for declaratory or injunctive relief against DHS are barred. (Doc. 24-1 at 10–11). Because the Court has determined that Martinez's claims against DHS are barred by sovereign immunity, the Court will not address these arguments.

[4] The parties' arguments regarding Martinez's state law claims for injunctive relief are primarily set forth in the briefing for Martinez's motion for a preliminary injunction. (Doc. 28 at 5; Doc. 29 at 5; Doc. 32 at 12). Because these arguments concern the Court's jurisdiction over these claims, these arguments are addressed here.

argues that "the state statutes here simply codify the same substance required by federal law." (Doc. 32 at 12). Martinez relies on *Frew v. Hawkins*, 540 U.S. 431, 439 (2004) to argue that her claims for prospective injunctive relief are not barred by sovereign immunity because they "would require Defendants to comply with constitutional obligations outlined in the Fourteenth Amendment and statutory parameters outlined in 42 U.S.C. § 671(a)(17)." (Doc. 32 at 14). But, in *Frew v. Hawkins*, the Supreme Court affirmed the issuance of injunctive relief based on the enforcement of a state decree implementing a federal statute. 540 U.S. at 439. Here, neither O.C.G.A. § 19-6-15(e) nor § 15-11-261(a) expressly implicate a federal statute or constitutional provision. Moreover, Martinez's amended complaint makes no reference to these federal statutes and solely relies on duties arising from state statutes. (Doc. 20 at ¶¶ 303–09). Thus, Martinez's state law claims for injunctive relief must be dismissed. That said, the Eleventh Amendment "does not bar the exercise of the judicial power of the United States where a plaintiff seeks to compel a state officer to comply with federal law." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) (citing *Ex Parte Young*, 209 U.S. 123, 158–59 (1908)). Accordingly, Martinez's claims for injunctive relief against the individual Defendants arising under federal law are not barred by sovereign immunity.

Third, Martinez has standing to bring her remaining claims for injunctive relief. There are three prerequisites for standing: "(1) the plaintiff has suffered an injury in fact—an invasion of a judicially cognizable interest . . . (2) there be a causal connection between that injury and the conduct complained of . . . ; and (3) it be likely, not merely

speculative, that the injury will be redressed by a favorable decision." *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019) (citation modified). For the final requirement, "a plaintiff needs to show that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 927 (11th Cir. 2023) (citation modified). "Significantly, for standing purposes the relief sought need not be complete." *Id.*

Defendants argue that Martinez does not have standing to bring an equal protection claim "because a favorable decision will not impact the custody of her children." (Doc. 24-1 at 12). But Martinez alleges that Defendants have threatened her with incarceration if she fails to pay her debts, and that she fears the loss of custody of her two remaining children due to Defendants' enforcement efforts. (Doc. 20 at ¶¶ 56 –59). While a favorable decision may not reunite Martinez with her older children, Martinez can show that a favorable decision would allow her to continue to have custody of her two youngest children without the fear of incarceration or loss of custody due to non-payment of erroneously accumulated child support debt. This allegation is sufficient to establish standing.

2. <u>Failure to State a Claim</u>

Defendants also argue that Martinez's amended complaint fails to state a claim. (Doc. 24-1 at 13). Specifically, Defendants argue Martinez has failed to state her equal protection claims, procedural due process claims, and substantive due process claim. (*Id.*)

a. *Equal Protection*

Martinez's amended complaint asserts two distinct equal protection claims and sufficiently alleges both. (Doc. 20 at ¶¶ 278–91). The Equal Protection Clause of the Fourteenth Amendment dictates that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV. As a general principle, the "purpose of the equal protection clause . . . is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citation omitted).

First, Martinez asserts an equal protection claim based on wealth discrimination, alleging that Defendants' child support enforcement discriminates against indigent parents in a manner that impedes their fundamental constitutional right to direct the upbringing of their children. (Doc. 20 at ¶¶ 112, 140–56, 278–86). "Laws that burden the exercise of a fundamental right require strict scrutiny and are sustained only if narrowly tailored to further a compelling government interest." *Lofton v. Sec'y of Dep't of Child. & Fam. Servs.*, 358 F.3d 804, 815 (11th Cir. 2004). "The Supreme Court has unambiguously held that discrimination against the indigent, without more, does not implicate a suspect classification—and thus does not trigger strict scrutiny." *Schultz v. Alabama*, 42 F.4th 1298, 1323 (11th Cir. 2022). However, "if the law impinges on a fundamental right, it is subject to strict scrutiny." *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir.

2009). A parent's interest in "the care, custody, and control of their children" is one of "the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Because Martinez alleges that Defendants' actions impact her fundamental right to direct the upbringing of her children, Defendants' enforcement is subject to strict scrutiny and must be narrowly tailored to further a compelling government interest.

Martinez plausibly alleges that Defendants' enforcement of child support orders against indigent parents is not narrowly tailored. Specifically, Martinez alleges that Defendants' enforcement unfairly impacts parents who cannot pay and creates hurdles to family reunification for low-income families. (Doc. 20 at ¶¶ 146, 151). Martinez further alleges that Defendants' enforcement policy is not narrowly tailored because Defendants' own stated interest in promoting family reunification is undermined by their ongoing enforcement efforts. (*Id.* at ¶¶ 123, 147–48, 150). Specifically, Martinez identifies Defendants' own public statements promoting the preservation of families and recognizing the harm that enforcement actions have on family reunification efforts. (*Id.*) Defendants allegedly softened their enforcement policies to provide greater opportunities for family reunification, indicating Defendants understand that their stringent enforcement against indigent parents is not narrowly tailored and undermines their own stated interests. (*Id.* at ¶¶ 149–50). Accepting these allegations as true and viewing them in the light most favorable to Martinez, she has plausibly alleged that Defendants have engaged in a policy that is not narrowly tailored to their stated interests and unfairly burdens indigent parents' fundamental rights to

direct the upbringing of their children in violation of the Equal Protection Clause.

For their part, Defendants challenge Martinez's allegations by arguing that she has failed to satisfy the test for wealth-based discrimination recognized in this Circuit. (Doc. 24-1 at 18; Doc. 29 at 7). The Eleventh Circuit has stated that wealth-based distinctions are impermissible where, "because of their impecunity[, the indigent] were completely unable to pay for some desired benefit, and as a consequence, they sustained an absolute deprivation of a meaningful opportunity to enjoy that benefit." *Walker v. City of Calhoun, Ga.*, 901 F.3d 1245, 1261 (11th Cir. 2018) (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 20 (1973)). Based on the allegations in the amended complaint, Martinez's poverty resulted in her being investigated by DHS, having her children removed from the home, and her subsequent inability to regain custody of those children because she could not pay the state-mandated child support. Martinez plausibly alleges that she has been absolutely deprived of her opportunity to parent because of Defendants' enforcement, and her inability to pay her child support debts caused her to surrender custody of her children. (Doc. 20 at ¶ 51). Further, Martinez alleges that Defendants have threatened her with incarceration if she is unable to pay, which if enforced, would completely deprive her of the custody and care of her youngest children.[5] (*Id.* at ¶¶ 56–59; Doc. 20-1 at ¶¶ 30–31). Martinez has plausibly alleged that the only thing

---

[5] Defendants assert that, under the test for wealth-discrimination set forth in *Walker* and *Rodriguez*, "[a] plaintiff receiving a meaningful opportunity to be heard about their indigency bars their wealth discrimination claim." (Doc. 29 at 7). This argument implicates due process, not equal protection. *Walker*, 901 F.3d at 1265.

effectively standing between her and her fundamental right to parent her children is her poverty. Accordingly, Martinez's amended complaint has adequately stated a claim for wealth-based discrimination as set out in *Walker*.

Martinez asserts a second equal protection claim based on Defendants' August 2024 policy change, alleging that Defendants treat parents with child support orders entered after the policy change more favorably than parents with child support orders entered before the policy change. (Doc. 20 at ¶¶ 287–91). "[T]he Equal Protection Clause requires government entities to treat similarly situated people alike." *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313 (11th Cir. 2006). "A showing that two [groups] were similarly situated requires some specificity." *Id.* at 1314. "Additionally, proof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim." *Parks v. City of Warner Robins, Ga.*, 43 F.3d 609, 616 (11th Cir. 1995). "Unlawful discriminatory purpose may be shown directly or inferred from the totality of the relevant facts." *Red Door Asian Bistro v. City of Fort Lauderdale*, No. 22-11489, 2023 WL 5606088, at *7 (11th Cir. Aug. 30, 2023) (citation modified).

Defendants argue that Martinez has failed to identify similarly situated parents who have received favorable treatment under the policy change, and that Martinez has further failed to show how the policy change provided more favorable treatment to parents with more recent child support orders.[6] (Doc. 24-1 at 16). But

[6] Defendants further argue that, even if the August 2024 policy change provided a benefit to parents with child support orders entered after the policy change, Martinez rationally could not have received that benefit because she had already

Martinez sufficiently alleges that both groups of parents are indigent, have or have had children in state custody, and have child support orders entered against them. (Doc. 20 at ¶¶ 161–62, 290). Further, Martinez alleges that Defendants, with no rational basis, decline to enforce child support orders entered after the policy change, and that this leniency does not apply to parents, like Martinez, with child support orders entered before the policy change. (*Id.* at ¶¶ 50, 161–62). Martinez alleges that this distinction is arbitrary and irrational because both sets of parents are essentially identical, except for the date the child support orders against them were entered. (*Id.* at ¶¶ 161–62, 166). Accordingly, accepting these allegations as true and viewing them in the light most favorable to Martinez, she adequately alleges an equal protection claim based on Defendants' intentional and unfair enforcement of child support orders against only some indigent parents based upon an arbitrary distinction.

b. *Due Process*

Under the Fourteenth Amendment, "[t]he Due Process Clause has two components: procedural and substantive." *Wood v. Raffensperger*, 501 F. Supp. 3d 1310, 1328 (N.D. Ga. 2020). Martinez asserts a substantive due process claim alleging that Defendants violated her fundamental right to direct the upbringing of her children. (Doc. 20 at ¶¶ 272–77). "The substantive component of the Due Process Clause protects those rights that are fundamental, that is, rights that are implicit in

surrendered her parental rights. (Doc. 29 at 11). This argument fails to consider the impact of Defendants' enforcement on Martinez's ability to parent her two youngest children, or that other similarly situated parents with child support orders entered before the policy change could benefit from the more lenient enforcement standard and be reunited with their children.

the concept of ordered liberty." *WBY, Inc. v. City of Chamblee, Ga.*, 434 F. Supp. 3d 1298, 1315 (N.D. Ga. 2020) (citation omitted). "To state a substantive-due-process claim under § 1983, a plaintiff must allege (1) a deprivation of a constitutionally protected interest, and (2) that the deprivation was the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation." *Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*, 132 F.4th 1232, 1239 (11th Cir. 2025) (citation modified). "[T]he liberty specially protected by the Due Process Clause includes the rights . . . to direct the education and upbringing of one's children . . . ." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citation modified).

Martinez plausibly alleges that Defendants' enforcement policies interfere with indigent parents' fundamental right to direct the upbringing of their children by hindering parents' ability to work towards reunification after a child has entered state custody. (Doc. 20 at ¶¶ 112–15, 118–20, 137, 275). Martinez further alleges that this interference is particularly acute for parents with child support orders entered before the 2024 policy change. (*Id.* at ¶¶ 117, 120). For example, Martinez alleges that Defendants' own stringent enforcement policies caused her to surrender her rights to her children in state custody and that Defendants' continued enforcement against her threatens her ability to financially provide and retain custody of her two youngest children. (*Id.* at ¶¶ 57–59, 127). Although Defendants argue that enforcement against indigent parents has a rational basis because it provides services to children and families, Martinez plausibly alleges that Defendants' policies arbitrarily and capriciously interfere with her and other indigent parents' fundamental rights. (Doc.

29 at 13). Taking these allegations as true as required at this stage, Martinez has stated a substantive due process claim.

Turning to Martinez's procedural due process claims, "[a] procedural due process claim raises two inquires: (1) whether there exists a liberty or property interest which has been interfered with by the State and (2) whether the procedures attendant upon that deprivation were constitutionally sufficient." *Wood*, 501 F. Supp. 3d at 1329 (citation modified). "The party invoking the Due Process Clause's procedural protections bears the burden . . . of establishing a cognizable liberty or property interest." *Id.* (citation modified). Importantly, "some kind of hearing is required at some time before a State finally deprives a person of his property interests. The fundamental requirement of due process is the opportunity to be heard and it is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Parratt v. Taylor*, 451 U.S. 527, 540 (1981) (citation modified).

Martinez asserts procedural due process claims on two grounds: that Defendants failed to properly assess her ability to pay child support prior to the entry of the order against her, and that Defendants continued to enforce the child support order against her even after all but one of her children had exited state custody. (Doc. 20 at ¶¶ 292–302). In response, Defendants primarily argue that Martinez failed to take advantage of her right to be heard and request modification both before and after the child support order was entered. (Doc. 24-1 at 24). Thus, Defendants argue they "did not violate [Martinez's] procedural due process rights when [they] fully informed [her] of the law and facts at issue, gave [her] notice . . . and afforded [her] an

opportunity for a hearing, which [she] declined." *Ashraf v. U.S. Drug Enf't Admin.*, 153 F.4th 1161, 1169 (11th Cir. 2025).

Martinez has plausibly alleged that she attempted to exercise her rights to modify her child support order, but Defendants' processes were practically unavailable to her. For example, Martinez alleges that she was never given the opportunity to expressly state her inability to pay and, because of her homelessness, she did not receive written notice of the child support order at the time it was entered. (Doc. 20-1 at ¶¶ 16–19). Further, Martinez alleges that her modification requests to DFCS were met with silence, and that she is unable to obtain the necessary documentation required to modify her child support order due to Defendants' own administrative hurdles, like requiring that she provide adoption records which she was prohibited from acquiring because she is no longer the children's legal guardian. (*Id.* at ¶¶ 35–38).[7] Accordingly, Martinez plausibly alleges that, even if Defendants had processes in place, those processes were not "meaningful" because she had no way to access them. *Parratt*, 451 U.S. at 540 (citation omitted). Accepting Martinez's allegations as true and viewing them in the light most favorable to her, Martinez has adequately stated her procedural due process claims.

[7] To the extent Defendants argue that Martinez failed to request a hearing on her child support order pursuant to O.C.G.A. §§ 19-11-12, 19-11-17, which provide for reconsideration of child support orders in case of a change in the parent's circumstances, Martinez has alleged that she experienced no change in circumstances and that she has never been able to pay the child support order. (Doc. 20-1 at ¶¶ 16, 32). And, she was met with silence and barriers to access even when she attempted to request a modification as her children exited state custody. (*Id.* at ¶¶ 35–38).

### B. Martinez's Motion for Preliminary Injunction

Martinez seeks a preliminary injunction on behalf of herself and a putative class as to her claims for procedural due process.[8] These claims are premised on Defendants' enforcement of child support debt against Martinez and other indigent parents for children who are no longer in state custody. (Doc. 20 at ¶¶ 298–309). Martinez alleges that Defendants have erroneously enforced a monthly $472.00 child support order against her beginning in October 2019 for children no longer in state custody, and seeks injunctive relief requiring Defendants to:

> (A) affirmatively modify or end support orders to account for children who have reached the age of majority, been adopted, or are otherwise no longer in foster care;
>
> (B) establish a simple and accessible procedure through which parents can notify Defendants of erroneous charges;
>
> (C) immediately correct erroneous charges upon notice from affected parents; and
>
> (D) cease enforcement mechanisms, including passport and license revocation while this litigation is pending.

(Doc. 26 at 1–2; Doc. 26-6 at 7). In their briefing and for most of oral argument, Defendants opposed Martinez's motion for a preliminary injunction and defended their enforcement against Martinez in the amount of $472.00 per month.[9] (Doc. 28;

---

[8] Martinez also sought injunctive relief based on violations of O.C.G.A. §§ 19-6-15(e) and 15-11-261(a), but as discussed above, these claims are barred by sovereign immunity.

[9] In fact, Defendants argued that the child support order made no distinction at all regarding the number of children in foster care and that "if there is even one child that is in DFCS custody, under the order from the administrative judge, [Martinez] would still owe 400—roughly $400 until someone sought . . . to get that amount changed." (Doc. 44 at 15–19). The Court noted at the hearing that this argument is inconsistent with both state law and the plain language of the child support order.

Doc. 40 at 2; Doc. 42 at 5–7). Defendants now assert that Martinez's motion for a preliminary injunction is moot because the child support order against her was modified in December 2025 to account for her children who have exited state custody, and Defendants' enforcement against her is no longer erroneous. (Doc. 40).[10]

1. Mootness

A case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979) (citation omitted). Accordingly, a case must be dismissed "if an event occurs while a case is pending . . . that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (citing *Mills v. Green*, 159 U.S. 651, 653 (1895)).

Federal courts, however, can adjudicate otherwise moot actions if the actions are "capable of repetition, yet evading review." *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975) (citation omitted). This exception is narrow and only applies in "exceptional situations." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). An action is "capable of repetition, yet evading review" when "(1) the challenged action was in its

[10] Martinez argues that Defendants' failure to disclose the child support order modification earlier violates the Federal Rules of Civil Procedure, the Local Rules of this Court, and the Georgia Rules of Professional Conduct. (Doc. 42 at 5–9). The Court agrees that Defendants' failure to timely disclose the December 2025 modification caused prejudice to Martinez and frustrated the Court's ability to efficiently evaluate the present motions. This is particularly true given the manner in which the modification was disclosed to the Court, in the middle of oral argument and after Defendants had vigorously defended their enforcement of the prior child support order amount. (*Id.*) Defendants are advised that any further incidents of lack of candor or other violations of this Court's rules may result in sanctions.

duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). Further, "[t]he remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001).

The present case is "capable of repetition, yet evading review" and, therefore, is not moot. First, Defendants modified Martinez's child support order a mere four months after Martinez filed her initial complaint in this litigation. (Docs. 1, 40-2). This duration of time is "too short to allow full consideration by the district court . . . ." *Bourgeois v. Peters*, 387 F.3d 1303, 1308–09 (11th Cir. 2004) (less than "one year is an insufficient amount of time for a district court, circuit court of appeals, and Supreme Court to adjudicate the typical case."). Second, Martinez has plausibly alleged facts from which the Court can reasonably infer she will again be subjected to erroneous enforcement. While Defendants modified Martinez's child support order, they did so only after she initiated this lawsuit against them. (Docs. 1, 40-2). Further, the modified order has no effect on the years of erroneous debt charged to Martinez for children who were no longer in state custody, and Defendants continue to engage in enforcement efforts to collect that debt. (Docs. 42-1, 42-2, 42-3). It is reasonable to expect that, without outside intervention, Defendants will continue to collect erroneously accumulated debt and may even continue to enforce the current child support order against Martinez even after her last remaining child ages out of state

custody.[11] *See Lynch v. Baxley*, 744 F.2d 1452, 1456 (11th Cir. 1984) ("Past wrongs do constitute evidence bearing on whether there is a real and immediate threat of repeated injury which could be averted by the issuing of an injunction."). Finally, as to whether Defendants' actions will be subject to review in case of recurrence, Martinez has already demonstrated that Defendants' available procedures failed to provide her with sufficient opportunity to seek modification on her own. (Doc. 26-1 at ¶¶ 16–19, 35–39). Without intervention, these barriers to access will likely continue.

Mootness is also overcome by the "voluntary cessation" exception. "Mere voluntary cessation of allegedly illegal conduct does not moot a case." *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1282 (11th Cir. 2004) (citation omitted). To establish mootness in this context, "the party that voluntarily ceased the challenged conduct must make it absolutely clear that the . . . behavior could not reasonably be expected to recur." *Norwegian Cruise Line Holdings Ltd v. State Surgeon Gen., Fla. Dep't of Health*, 55 F.4th 1312, 1317 (11th Cir. 2022) (citation modified). "The possibility that [a party] may change its mind in the future is sufficient to preclude a finding of mootness." *United States v. Generix Drug Corp.*, 460 U.S. 453, 456 n.6 (1983). But "[g]overnment defendants receive the benefit of the doubt in voluntary-cessation cases: When they voluntarily stop the challenged conduct, a rebuttable presumption arises that they will not reengage in it." *Keister v. Bell*, 29 F.4th 1239, 1250 (11th Cir. 2022). But "the government actor is entitled to

---

[11] Martinez's last child in state custody will turn 18 years old and presumably exit state custody in April 2027. (Doc. 20-2 at 2; Doc. 42 at 15).

this presumption only *after* it has shown unambiguous termination of the complained of activity." *Doe v. Wooten*, 747 F.3d 1317, 1322 (11th Cir. 2014).

Here, Defendants have modified Martinez's child support order and, as government actors, are entitled to the "rebuttable presumption" that they will not reengage in their erroneous enforcement activities. Defendants, however, have failed to show that they "unambiguously terminated" their erroneous enforcement against Martinez. In determining whether there is a reasonable basis that the conduct will recur, courts should consider "(1) whether the termination of the offending conduct was unambiguous; (2) whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction; and (3) whether the government has consistently applied a new policy or adhered to a new course of conduct." *Id.* at 1323 (citation omitted). Defendants modified Martinez's child support order only after she initiated this litigation, and Defendants continue to engage in enforcement activities to collect debt accumulated erroneously before the child support order was modified. (Docs. 1, 40-2, 42-1, 42-2, 42-3). Further, Defendants have made no assurances that they will take action to prevent future erroneous enforcement against Martinez once her remaining child exits state custody, nor have they indicated that they will correct erroneous enforcement against other parents. Defendants' cessation of erroneous enforcement against Martinez—especially after vehement argument that the prior child support order was proper even after several children aged out or were adopted out of foster care, and only after she sued them—fails to make it "absolutely clear" that their

erroneous enforcement will not recur in the future. *Norwegian*, 55 F.4th at 1317 (citation omitted). Thus, the circumstances present in this case overcome Defendants' rebuttable presumption that the erroneous enforcement will not continue.

For these reasons, Martinez's request for a preliminary injunction is not moot, despite Defendants' modification of the child support order against her. Accordingly, the Court is not deprived of its ability to consider the merits of Martinez's motion for a preliminary injunction. *Wooten*, 747 F.3d at 1322 ("It is well settled that when a defendant chooses to end a challenged practice, this choice does not always deprive a federal court of its power to decide the legality of the practice.").

2. Requirements for a Preliminary Injunction

a. *Martinez is likely to succeed on the merits of her procedural due process claim.*

"In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). "Procedural due process requires adequate notice and a meaningful opportunity to be heard." *Ashraf*, 153 F.4th at 1168. "In determining whether there has been constitutionally inadequate process, we . . . 'look to the nature of the private interest affected, the risk of erroneous deprivation, the value of additional safeguards, and the government's interest, including any burdens.'" *Id.* (quoting *Schultz*, 42 F.4th at 1332).

Martinez has satisfied this standard. First, Martinez has a significant and constitutionally protected interest in preserving her and her family's financial assets.

*Resnick v. KrunchCash, LLC*, 34 F.4th 1028, 1035 (11th Cir. 2022) ("Plaintiffs have a constitutionally protected property interest in their own funds"). Second, Martinez has demonstrated that, even after Defendants' modification of her child support order, Defendants are still attempting to collect debt from Martinez that should not have been charged against her in the first place. (Doc. 42 at 9). Third, Martinez has shown that Defendants' modification processes were, and continue to be, practically inaccessible to her, and that Defendants' isolated modification of Martinez's child support order does nothing to improve Defendants' woefully inadequate modification procedures. (Doc. 26-6 at 15; Doc. 26-1 at ¶¶ 35–38); *see Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 22 (1978) (finding that due process was not satisfied by a procedure that did not allow the plaintiffs "an opportunity to present their complaint to a designated employee empowered to review . . . and rectify error"). Finally, Martinez has shown that the government has no legitimate interest in collecting erroneously charged fees or debt. (Doc. 26-6 at 18; Doc. 42 at 9).

Defendants again argue that Martinez's procedural due process claims are unlikely to succeed on the merits because she failed to take advantage of designated modification procedures. (Doc. 28 at 12). Indeed, "[w]here the government has provided the opportunity for a remedy to address the deprivation of the constitutionally protected interest, but the [plaintiff] failed to take advantage of it, the [plaintiff] cannot rely on that failure to prove that [she] was deprived of procedural due process." *Ashraf*, 153 F.4th at 1168 (citation modified). As discussed above, however, Martinez alleges that she was not informed of the child support

order, was not given a meaningful opportunity to attend the hearing and make her inability to pay known, and that her later attempts to modify the child support order were met with either silence, inaction, or insurmountable administrative barriers. (Doc. 26-1 at ¶¶ 16–19, 35–39). Martinez has clearly established that she attempted in good faith to use the available modification procedures provided by Defendants, but that these procedures were, and continue to be, inaccessible. "Where the statutory process is 'unavailable or patently inadequate,' the plaintiff need not make use of it before bringing a procedural due process challenge." *Martin v. Houston*, 176 F. Supp. 3d 1286, 1304 (M.D. Ala. 2016) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Accordingly, Martinez has met her burden to establish a substantial likelihood of success on her procedural due process claim.

b. *Martinez will likely suffer an irreparable injury.*

"An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987) (citing *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983)). Martinez has shown that she and parents like her are likely to suffer irreparable harm if an injunction does not issue. For example, Martinez has presented evidence and plausible allegations that, despite Defendants' modification of her child support order, Defendants continue to enforce collection against her of erroneously accumulated debts, that this enforcement hinders her ability to provide for herself and her children, and that she faces threatened incarceration and loss of custody of her youngest children if she is unable to pay. (Doc. 26-1 at ¶¶ 31–32; Doc. 42 at 9). This is enough to constitute an irreparable injury.

This is especially true when, as here, sovereign immunity bars adequate remedies at law, like damages. *See Odebrecht*, 715 F.3d at 1289 ("In the context of preliminary injunctions, numerous courts have held that the inability to recover monetary damages because of sovereign immunity renders the harm suffered irreparable.").

c. *The threatened injury to Martinez outweighs the harm to Defendants.*

Martinez's threatened injury—the collection of debt erroneously charged against her under the prior child support order, coupled with the threat of incarceration if she fails to pay it—outweighs any minimal harm to Defendants. (Doc. 26-1 at ¶¶ 31–32; Doc. 42 at 9). While Defendants argue that Martinez's requested relief would burden the state by forcing it to overhaul its entire child support system, the preliminary injunction would merely require Defendants to correct their past errors and to comply with the law. (Doc. 28 at 8–9); *see Storer Commc'ns, Inc. v. Mogel*, 625 F. Supp. 1194, 1203 (S.D. Fla. 1985) ("Defendants will suffer no harm if an injunction is issued which simply requires them to obey the law."). The state's purported interest in continuing a child support system that likely violates parents' constitutional rights is no interest at all. And, the threatened injury posed to Martinez and other parents by allowing Defendants to resume business as usual far outweighs any possible harm to Defendants that may arise from issuing this injunction.

d. *Martinez's requested relief serves the public interest.*

Martinez's requested relief seeks to prevent erroneous enforcement of child support orders for children no longer in state custody, or the collection of debt accumulated therefrom, and further strives to streamline child support order

modification procedures, serving the interests of all parents in Georgia with children in state custody. (Doc. 26-6 at 26). These goals clearly serve the public interest. Further, Martinez's requested relief will require the state to comply with the law. (*Id.* at 27). "It is both equitable and in the public interest to require Defendants to abide by the law." *G.W. Henssler & Assocs., Ltd. v. Marietta Wealth Mgmt., LLC*, No. 1:17-cv-02188-TCB, 2017 WL 6996372, at *6 (N.D. Ga. Oct. 23, 2017).

e. *The Court may issue injunctive relief on behalf of Martinez's putative class.*

Finally, Martinez argues that the Court can grant her request for injunctive relief on behalf of the putative class. (Doc. 26-6 at 27). Martinez defines the putative class in her amended complaint as:

> [a]ll persons who are or have been charged child-support for children in foster care whose children have reached the age of majority and concluded secondary school or have been adopted, and who were charged child-support after the time at which those children reached the age of majority and concluded secondary school or were adopted.

(Doc. 20 at ¶ 233).[12] "[C]ourts may issue temporary relief to a putative class." *A.A.R.P. v. Trump*, 605 U.S. 91, 98 (2025); *see also Benjamin v. Oliver*, 800 F. Supp. 3d 1314, 1341 (N.D. Ga. 2025) ("The availability of class-wide injunctive relief to a putative class is no longer in doubt . . . ."). For purposes of issuing a preliminary injunction on behalf of a putative class, the Supreme Court has stated that courts "need not decide whether a class should be certified." *A.A.R.P.,* 605 U.S. at 98. However, "possible

[12] Martinez initially asserted two putative classes, but her motion for a preliminary injunction makes clear that she is seeking injunctive relief on behalf of only one putative class. (Doc. 20 at ¶¶ 232–33; Doc. 26-6 at 7).

ambiguity in the Supreme Court's language and tension with its subsequent reasoning . . . counsels that a district court would be on safest ground if it were to go through the entire Rule 23 analysis prior to granting preliminary relief." *Mercado v. Noem*, 800 F. Supp. 3d 526, 559 (S.D.N.Y. 2025) (citation modified).

The amended complaint includes extensive class action allegations. (Doc. 20 at ¶¶ 231–71). Defendants' briefing, while making passing reference to a class "that this Court has not yet certified," fails to engage at all with Martinez's class action allegations. (Doc. 28 at 5). "When a party fails to provide arguments on the merits of an issue, and makes only passing reference to it in the initial brief, the argument is deemed waived and we need not address it." *United States v. Evans*, 292 F. App'x 761, 762 (11th Cir. 2008). But, because preliminary injunctive relief on behalf of a putative class is "an extraordinary and drastic remedy," the Court, out of an abundance of caution, evaluates Martinez's class action allegations here. *Suntrust Bank*, 252 F.3d at 1166.

"Any analysis of class certification must begin with the issue of standing." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987)). "To have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also be part of the class and possess the same interest and suffer the same injury as the class members." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (citation modified). As previously discussed, Martinez has established individual standing to bring her claims. Further, while Martinez is no longer subject to the erroneous

enforcement of a child support order for children no longer in state custody, Martinez is still subject to the collection of debt stemming from prior erroneous enforcement. (Doc. 42 at 9). Accordingly, despite Defendants' modification of her child support order, Martinez can demonstrate the "same interest" and "same injury" as the putative class members because both Martinez and the putative class members are subject to ongoing erroneous enforcement of some kind.

Further, even if the Court *had* found that Martinez no longer shared the same interest or injury as the putative class members after Defendants' modification, Martinez could retain standing to represent the class under the "relation back" doctrine. "The relation-back doctrine allows a named plaintiff whose individual claims are moot to represent class members not because the named plaintiff has moved to certify a class but because the named plaintiff will adequately present the class claims and unless the named plaintiff is allowed to do so the class claims will be capable of repetition, yet evading review." *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 707 (11th Cir. 2014). This doctrine applies "even if the named plaintiff has not moved for class certification." *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 21-11769, 2023 WL 5608014, at *12 (11th Cir. Aug. 30, 2023) (citing *Stein*, 772 F.3d at 707). To retain standing under the "relation back" doctrine, two circumstances must be met: "First, that the defendant be capable of 'picking off' the named plaintiff's claims, and second, that the named plaintiff be 'diligent' in pursuing the class claims." *Id.* The "picking off" exception "cures mootness when a defendant resolves the named plaintiff's claims before class certification—by, for instance, paying the named

plaintiff's individual claim or ceasing illegal conduct as to the named plaintiff." *Id.* at *10. Here, Martinez can show that Defendants have attempted to "pick off" her claims by modifying her child support order after she filed her initial complaint, despite years of charging her for children that were not in the foster care system. (Docs. 1, 40-2). Further, Martinez has exhibited diligent pursuit of her claims on behalf of the putative class, including by bringing class action allegations in her complaint and vigorously litigating this case, even though she has not yet sought class certification. (Doc. 20 at ¶¶ 231–71); *see Stein*, 772 F.3d at 707 ("[A] named plaintiff need not file a class-certification motion with the complaint or prematurely; it is enough that the named plaintiff diligently takes any necessary discovery, complies with any applicable local rules and scheduling orders, and acts without undue delay."). Accordingly, Martinez would retain standing to represent the putative class, despite Defendants' December 2025 modification.

After establishing standing, the Court must next find that the proposed class is "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (citation omitted). Martinez has met this requirement by defining a discrete class of only individuals who have been subjected to erroneous child support order enforcement after their children have been adopted or have aged out of foster care. (Doc. 20 at ¶ 233).

Next, a plaintiff seeking class certification must satisfy each of the prerequisites of Federal Rule of Civil Procedure 23(a). *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). A plaintiff must show that (1) the class is so

numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a). These prerequisites are commonly referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Vega*, 564 F.3d at 1265.

Martinez's class certification allegations demonstrate that she has satisfied the Rule 23(a) class certification requirements for the purpose of seeking a preliminary injunction. As to numerosity, there is no fixed numerosity rule in the Eleventh Circuit, but "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (citation omitted). Martinez alleges that, because "700 children were removed from homes where parents were likely indigent and incapable of making child-support payments," the putative class is "composed of hundreds to thousands of members." (Doc. 20 at ¶¶ 236–37). As to commonality, this requirement is satisfied when there is at least one common question, the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Martinez identifies several questions common among the putative class, including "do Defendants frustrate or prevent parents from requesting modifications when their children reach the age of majority or are adopted?" (Doc. 20 at ¶ 243). As to typicality, a plaintiff must show that the "claims or defenses of the class and the

class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Martinez alleges that her claims and the claims of the putative class both arise from Defendants' erroneous enforcement of child support orders and the collection of accumulated debt therefrom, in addition to Defendants' inadequate modification procedures. (Doc. 20 at ¶ 246; Doc. 42 at 9). As to adequacy, a plaintiff must show "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). Martinez alleges that she has no interest adverse to any of the putative class members, and that her counsels' experience and ability to prosecute this case will serve the interests of the entire class. (Doc. 20 at ¶¶ 257, 259–60). In the absence of any argument from Defendants, Martinez plausibly alleged sufficient facts to satisfy Rule 23(a) for the purpose of seeking preliminary injunctive relief.

Finally, the party seeking class certification must satisfy at least one of the requirements of Rule 23(b). *Vega*, 564 F.3d at 1265. Martinez has alleged compliance with Rule 23(b) on three bases, and in particular, Rule 23(b)(2). (Doc. 20 at ¶¶ 261–71). This rule requires a plaintiff to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). Rule 23(b)(2) requires assessment of (1) the general

applicability of the defendant's action or inaction and (2) the appropriateness of the requested relief to the class as a whole. *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1344 (11th Cir. 2006). Martinez alleges that Defendants have erroneously enforced child support orders, or the collection of debt accumulated from that enforcement, in the same manner against her and members of the putative class, and that the requested preliminary injunction would provide relief to her and the putative class members. (Doc. 20 at ¶ 262; Doc. 42 at 9). These allegations, in the absence of any response from Defendants, satisfies Rule 23(b)(2).

## CONCLUSION

For these reasons, Defendants' Motion to Dismiss (Doc. 24) is **GRANTED IN PART and DENIED IN PART**. Defendants' motion to dismiss Martinez's claims against DFCS, DCSS, and DHS; her claims for damages against the individual Defendants; and her state law claims for injunctive relief is **GRANTED**. The Clerk is respectfully **DIRECTED** to terminate DFCS, DCSS, and DHS as parties to this action. Defendants' motion to dismiss Martinez's federal claims for injunctive relief against the individual Defendants is **DENIED**. Defendants' Motion to Supplement Record (Doc. 40) is **GRANTED**. The individual Defendants' answers to Martinez's amended complaint are due by **October 7, 2026**. The parties' Joint Preliminary Report and Discovery Plan is due by **November 6, 2026**.

Martinez's Motion for Preliminary Injunction (Doc. 26) is **GRANTED IN PART and DENIED IN PART**. Martinez's motion for preliminary injunction arising from violations of state law is **DENIED**. A preliminary injunction as to Martinez's federal

procedural due process claim is **GRANTED**. Accordingly, the Court **ORDERS** the Director of the Division of Family and Children Services, the Commissioner of the Department of Human Services, the Chief Policy Officer for the Department of Human Services, and the Assistant Deputy Commissioner of the Division of Child Support Services to:

1. Affirmatively modify or end support orders to account for children who have reached the age of majority, been adopted, or are otherwise no longer in foster care;
2. Establish a simple and accessible procedure through which parents can notify Defendants of erroneous charges;
3. Immediately correct erroneous charges upon notice from affected parents; and
4. Cease enforcement mechanisms, including passport and license revocation, while this litigation is pending.

This Order shall remain in effect during the pendency of this action.

SO ORDERED, this 23rd day of September, 2026.

TIFFANY R. JOHNSON
United States District Judge